J-A27017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| SETH MULL | : | |
| Appellant | : | No. 2392 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 5, 2019
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0001762-2018

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| SETH MULL | : | |
| Appellant | : | No. 2393 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 5, 2019
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0004318-2017

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| SETH MULL | : | |
| Appellant | : | No. 2394 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 5, 2019
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0004319-2017

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|

|  |  |  |  |
|---|---|---|---|
|  | : |  |  |
| v. | : |  |  |
|  | : |  |  |
|  | : |  |  |
|  | : |  |  |
| SETH MULL | : |  |  |
|  | : |  |  |
| Appellant | : | No. 2395 EDA 2019 |  |

Appeal from the Judgment of Sentence Entered April 5, 2019
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0004320-2017

BEFORE:   STABILE, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                    Filed: May 13, 2021

Appellant Seth Mull appeals from the judgments of sentence imposed after his jury trial convictions for rape, human trafficking, and related offenses.  Appellant claims that the trial court erred in joining the cases for trial and in admitting prior bad acts evidence.  We affirm.

On October 29, 2017, at CP-48-CR-0004320-2017 (4320-2017), Bethlehem Police filed a criminal complaint charging Appellant with the rape, strangulation, terroristic threats, simple assault, unlawful restraint, false imprisonment, possession of a controlled substance, possession of a small amount of marijuana, possession of a drug paraphernalia, and human trafficking.[1]  Those charges concerned complainant J.M.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3121(a)(1), 2718(a)(1), 2706(a)(1), 2701(a)(1), 2902(a)(1), 2903; 35 P.S. § 780-113(a)(16), (31)(i), (32); and 18 Pa.C.S. § 3011(a), respectively.

On November 16, 2017, at docket CP-48-CR-0004319-2017 (4319-2017), Colonial Regional Police filed a criminal complaint charging Appellant with rape, aggravated indecent assault, and indecent assault.[2] Those charges concerned complainant A.S.

On November 27, 2017, Philadelphia Police filed a criminal complaint charging Appellant with aggravated assault, rape, involuntary deviate sexual intercourse, strangulation, sexual assault, unlawful restraint, simple assault, recklessly endangering another person, false imprisonment, kidnapping, human trafficking, and involuntary servitude concerning complainant B.B.[3] On May 17, 2018, the Philadelphia Court of Common Pleas transferred that case to Northampton County where the case received the docket number CP-48-CR-0001762-2018 (1762-2018).

On December 20, 2017, at CP-48-CR-0004318-2017 (4318-2017), Bethlehem Police filed a criminal complaint charging Appellant with rape, involuntary deviate sexual intercourse, sexual assault, indecent assault, strangulation, terroristic threats, simple assault, unlawful restraint, human

_____

[2] 18 Pa.C.S. §§ 3121(a)(1), 3125(a)(2), and 3126(a)(2), respectively.

[3] 18 Pa.C.S. §§ 2702(a)(1), 3121(a)(1), 3123(a)(1), 2718(a)(1), 3124.1, 2902, 2701(a)(1), 2705, 2903(a), 2901(a)(3), 3011(a)(1), and 3012(b)(1) respectively.

trafficking, and involuntary servitude.[4] Those charges concerned complainant A.F.

The charges in these four cases involved offenses that occurred between September 1, 2017, and October 27, 2017, at different hotels in the Lehigh Valley and one hotel in Philadelphia. The complainants were all of the same race and ranged in ages from nineteen to twenty-five years old.

The parties filed the following relevant pretrial motions. On December 21, 2017, the Commonwealth filed a motion to join the charges at 4318-2017, 4319-2017, and 4320-2017 for preliminary hearings and trial. On June 12, 2018, the Commonwealth again filed a motion to consolidate all four cases, including 1762-2018. On July 23, 2018, Appellant filed a motion to sever the cases arguing that joinder was improper under Pa.R.Crim.P. 582(A) and would result in prejudice under Rule 583. On September 21, 2018, the Commonwealth filed a motion *in limine* to admit other prior bad acts evidence, to which Appellant filed a response in objection.

On November 26, 2018, the trial court granted joinder of the four cases and denied Appellant's motion to sever the cases.[5] Further, the trial court granted, in part, the Commonwealth's motion to present prior bad acts

---

[4] 18 Pa.C.S. §§ 3121(a)(2), 3123(a)(2), 3124.1, 3126(a)(1), (3), 2718(a)(1), 2706(a)(1), 2701(a)(1), 2902(a)(2), 3012(b)(1), (2), and 3011(a)(1), respectively.

[5] The trial court's November 26, 2018 order stated that the court granted joinder, noting that joinder had been previously granted. The court denied severance without any explanation.

evidence. Therein, the trial court found admissible testimony from C.F. regarding Appellant's prior uncharged acts.[6]

The cases proceeded to a consolidated jury trial at which all four complainants and C.F. testified against Appellant. We summarize their testimony as follows.

## B.B.

At 1762-2018, B.B. testified that she knew Appellant and that they previously "hung out" on two occasions. On September 1, 2017, she traveled to Philadelphia with Appellant to attend the Made in America music festival. She brought marijuana, cocaine, and methamphetamines with her. She testified that Appellant asked her to bring the methamphetamines. She and Appellant planned to stay together at a hotel, and they arrived in the early morning hours of September 2, 2017. Once there, they consumed the cocaine and marijuana, and had consensual sex.

Later that day, Appellant arranged to buy additional cocaine from a female. B.B. left the hotel for a while to walk Appellant's dog, when she returned to the room, she heard Appellant and the female who brought the drugs having sex. B.B. stated she became angry because she "was on a date with him." N.T. Trial Vol. 1, 12/4/18, at 97. She and Appellant then went to the music festival but returned a short time later due to rain.

_____

[6] The trial court granted the Commonwealth's motion *in limine* to admit several prior bad acts witnesses. However, at trial, the Commonwealth only called C.F. from among those witnesses.

When B.B. and Appellant returned to the hotel room, Appellant pressured her to try the methamphetamines, but she refused. Appellant slapped her across the face and made her consume methamphetamines. According to B.B., Appellant stated, "You're not going to say no to me." *Id.* at 99. He later got on top of her, strangled her with both of his hands, took off her clothes, and raped her. B.B. testified she was terrified of Appellant.

B.B. testified that later she followed Appellant's instructions for her to meet a man in the lobby to get more drugs and bring him back to the room. Once back in the room, the man attempted to grope her. She ran out of the room into the hallway and sent text messages to Appellant, including one reading, "You can beat me all you want when I get back, but I'm not sleeping with another man." *Id.* at 103.

When B.B. returned to the hotel room, she stated, "[I]t all went really bad." *Id.* Specifically, B.B. testified that Appellant put duct tape over her mouth and blindfolded her, and he told her to refer to him as "master" or "sir" and that "no was not an acceptable answer for him." *Id.* at 103-04. He forced her to consume more drugs. He repeatedly choked her to the point of unconsciousness and raped her, recording several instances on his phone. He referred to a "sex slave contract." *Id.* at 104. He threatened that she was not going to see her mother or son again. Although he allowed her to use her phone to call her family to say goodbye, he then took the phone and locked it in a drawer, saying it was now his.

B.B. testified that Appellant then invited the man who Appellant previously introduced to B.B. back to the room. That person raped her while Appellant held her down on the bed. Appellant and the other person forced her to perform various acts of intercourse, and Appellant forced her to consume more methamphetamines. The other person eventually left, but Appellant continued to beat and rape her. She stated that Appellant was angry because she did not do what she was told.

On the morning of September 4, 2017, Appellant's physical and sexual attacks continued. B.B. testified that she managed to get her phone from the drawer and called 911 for an ambulance. Appellant recorded her 911 call on his phone. After the call, Appellant threatened her family and told her to send the ambulance away. B.B. testified that she did so she could return home.

The following day, September 5, 2017, Appellant and B.B. traveled back from Philadelphia together. Appellant stated everything was B.B.'s fault and that she deserved it. When she returned home, B.B. sent Appellant a text message and thanked him for "great time" and apologized for things not going as planned. *Id.* at 115. B.B. explained that she sent the message in fear that Appellant would retaliate against her and her family, and that she did not report the incident to police until she learned that Appellant was in custody related to one of the other cases.

**A.S.**

At 4319-2017, A.S. testified that on September 26, 2017, she met Appellant after asking a friend, D.K., for a ride home from another friend's

house. D.K. picked up A.S. but took her to a hotel. They went to a room where Appellant was, and Appellant offered A.S. money for sex. She refused and wanted to leave, but Appellant would not let D.K. to take her home. A.S. also tried to leave to get a soda and cigarettes, but Appellant suggested that D.K. either go or that all three go together. D.K. eventually got the soda and went to a convenience store to get cigarettes while A.S. remained in the room.

When D.K. returned, Appellant prepared lines of cocaine and asked A.S. to partake. A.S., who had substance abuse issues, initially refused, but ingested a line after Appellant became angry. Appellant asked A.S. to arrange for more drugs, which D.K. picked up. When D.K. returned, Appellant became angry about the quality of the drugs, told A.S. he had "lawyers," and that she was "his property for the next 24 hours." *Id.* at 52.

A.S. stated that Appellant took her and D.K.'s phones, ripped off her clothes, and then pushed her on to the bed. Appellant held her down and forced her and D.K. to perform oral sex on each other. Appellant raped A.S. When she asked Appellant to stop and tried to yell out, Appellant struck her or put a pillow over her face. Appellant put his hands around her neck.

A.S. stated that she felt sick, and she went to the bathroom while Appellant and D.K. had sex. She remained in the bathroom for approximately one hour, and then ran out of the room naked with only a hand towel. Hotel staff called the police and during the investigation, Appellant showed a detective videos of A.S. on his phone.

**A.F.**

At 4318-2017, A.F. testified that on October 19, 2017, she received a message from D.K. to hang out and asking if she wanted to make money. D.K. arranged for a ride service to take A.F. to a hotel. When she arrived at the room, D.K. was with Appellant. A.F. had not met Appellant before. D.K. left the room to get drugs.

While they were alone, Appellant told A.F. that she was to do what he told her, and that if she did not, he would beat or kill her, her family, and her friends. When D.K. returned with the drugs, which included methamphetamines, Appellant pressured her to take them. Appellant then forced A.F. and D.K. to engage in oral sex with each other, and then Appellant raped A.F. Appellant punched her, strangled her, and he told her to call him "sir." *Id.* at 56.

A.F. remained with Appellant for approximately four days at different hotels. Although she would leave Appellant, at times going home, she returned to where Appellant was staying. According to A.F., Appellant threatened to kill her and her family if she did not come back to him. Appellant told A.F. that he would arrange for other men to have sex with her. Two other individuals raped A.F. after Appellant blindfolded her and tied her to the bed. Appellant further had A.F. perform oral sex with another female. Appellant continued to force A.F. to consume drugs, and ultimately made her bring a group of her friends to a hotel room. Appellant arranged for A.F.'s friends to leave by a ride service, A.F. was able to leave shortly thereafter, and did not return.

**J.M.**

At 4320-2017, J.M., who had met Appellant on Plenty of Fish, an internet dating site, went to a hotel to meet Appellant in person on October 27, 2017. Appellant convinced J.M. to take what he said was THC oil, but Appellant later told her that it was methamphetamines. Appellant ripped off J.M.'s clothes after she indicated that she did not want to have sex. He performed oral sex on her as she said "no." *Id.* at 40. Appellant then vaginally raped her, during which he hit her on her face and choked her.

Over the next nearly twenty-four hours, Appellant raped J.M. repeatedly. He took her cellphone required her to call him "master" or "sir" and told her to say that she wanted him to rape her. *Id.* at 42. Appellant took her phone. Appellant struck her on the mouth and choked her. She ingested methamphetamines. J.M. testified that she pretended to enjoy the abuse to minimize it.

Appellant instructed J.M. to arrange a meeting for sex with another individual for $300.00. When Appellant gave J.M. her cell phone to make the arrangements, J.M. texted her father that she was in trouble and had been abused. J.M.'s father called the police, who went to the hotel.

During the investigation, Appellant denied having sex with J.M. Meanwhile, a sexual assault examination of J.M. revealed several injuries, including a swollen bottom lip, a burn and bite mark, and bruising, as well as the presence of Appellant's DNA.

**C.F.**

C.F., who testified as a prior bad acts witness pursuant to the trial court's pretrial ruling, stated that she initially met Appellant on the Plenty of Fish internet site in November 2013. C.F. went to Appellant's apartment where he pulled her by the hair and ripped off her clothes and required her to remain naked. C.F. stated that Appellant told her that she was his property and raped her. Appellant choked her to the point of unconsciousness.

Appellant told C.F. that another person was coming to his apartment. He threatened to kill her if she tried to leave or tell anyone. The other person arrived and they both raped her. Appellant also held her down and strangled her. C.F. left shortly after the assault, but Appellant stated if she told anyone what happened, he would kill her.

In addition to the testimony from the four complainants and C.F., the Commonwealth presented evidence obtained from the investigations, including a "slave contract sample" on Appellant's phone, and searches for pornography involving sex trafficking and slaves. Appellant's phone also contained videos of B.B., A.S., and A.F. The Commonwealth also presented evidence that the individual whom Appellant forced J.M. to contact was intending to have sex with her.

On December 7, 2018, the jury found Appellant guilty in each of the four cases.[7] On April 5, 2019, the trial court sentenced Appellant to an aggregate

---

[7] The jury found Appellant not guilty of some of the offenses at 4318-2016 and 4319-2016.

seventy-eight-and-a-half years to life imprisonment.[8]   Appellant timely filed post-sentence motions.

On August 12, 2019, Appellant filed separate notices of appeal asserting that the 120-days for deciding his post-sentence motion had expired and his motions should be deemed denied by operation of law.   The trial court subsequently entered orders addressing and denying Appellant's post-sentence motions on August 14, 2019.[9]   Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following questions for review:

1. Did the [t]rial [c]ourt err in permitting the four informations to be tried together despite the fact that they were never joined pursuant to the Rules of Criminal Procedure?

2. Did the [t]rial [c]ourt err in joining the four informations and in not severing them?

3. Did the [t]rial [c]ourt err in admitting C.F.'s testimony as Rule 404(b) evidence?

Appellant's Brief at 5.

**Rule 582(B)**

---

[8] The trial court imposed the maximum term of life imprisonment for human trafficking at 1762-2018 based on 42 Pa.C.S. § 9720.2.

[9] We acknowledge that these appeals were technically premature because the clerk of the court did not enter the orders denying Appellant's post-sentence motions by operation of law after 120 days.  Additionally, the trial court's order denying Appellant's post-sentence motion was entered beyond the 120-day period, and the court did not timely find good cause for extending the deadline.  Nevertheless, under the circumstances of this case, we regard as done that which should have been done and decline to quash these appeals. ***See Commonwealth v. Khalil***, 806 A.2d 415, 419-20 (Pa. Super. 2002).

Appellant first challenges the procedures by which the Commonwealth joined 4318-2017, 4319-2017, 4320-2017, which Appellant refers to as the Northampton County cases. Appellant notes that the Commonwealth filed a motion to join the Northampton County cases before the preliminary hearing and another motion to join all four cases. Appellant, however, contends that the Commonwealth did not properly comply with the notice and motion provision under Rule 582(B). Appellant asserts that the Commonwealth's failure to follow Rule 582(B) prevented the trial court from fully considering joinder of the Northampton cases and deprived him of the opportunity to object to the joinder of those cases.

Generally, the decision to "join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to the defendant." *Commonwealth v. Wholaver*, 989 A.2d 883, 898 (Pa. 2010). Rule 582 states in relevant part:

> **(B) Procedure**
>
> (1) Notice that offenses or defendants charged in separate indictments or informations will be tried together shall be in writing and filed with the clerk of courts. A copy of the notice shall be served on the defendant at or before arraignment.
>
> (2) When notice has not been given under paragraph (B)(1), any party may move to consolidate for trial separate indictments or informations, which motion must ordinarily be included in the omnibus pretrial motion.

Pa.R.Crim.P. 582(B).

- 13 -

Initially, a review of the record establishes that Appellant did not object to the procedural aspects of the joinder of the Northampton County cases. Despite being aware of the Commonwealth's intention to join the cases, and his opportunity to file a pre-trial motion to sever all four cases, Appellant did not contest the procedural issues he now raises in this appeal. The failure to raise such challenges precluded the trial court from considering the arguments or fashioning a remedy if the trial court found procedural irregularities that Appellant now raises on appeal. Accordingly, we conclude Appellant's challenge based on Rule 582(B) is waived.[10] *See* Pa.R.A.P. 302(a).

## Rule 582(A)

Next, Appellant challenges the substantive bases for joining all four cases under Pa.R.Crim.P. 582 and 583. Appellant contends that the only commonality among the cases were the presence of drugs and the allegations of sexual assault. Appellant's Brief at 30. He emphasizes numerous differences among the four cases. *Id.* at 30-32. For example, Appellant notes that A.S. did not testify to any allegations he trafficked or attempted to traffic her for sex and that the Commonwealth did not charge him with human

_____

[10] In any event, even if the Commonwealth did not follow the exact procedures outlined in Rule 582(B), we agree that it provided ample notice of its intention to join the three Northampton County cases for trial as well as the fourth case at 1762-2018. As noted by the trial court, Appellant's counsel was aware of the joinder and made statements indicating that Appellant preferred to address all cases against him together, but that he intended to explore the option of challenging joinder. Moreover, for the reasons discussed herein, we find no merit in Appellant's suggestion that the procedures in this case prevented the trial court from properly considering all factors relevant to joinder under Rules 582(A) and 583.

trafficking offenses in that case. *Id.* at 31. Appellant further contends that he met the complainants in different ways. He notes that B.B. and J.M. had prior contacts with him before the alleged assault, while A.S. and A.F. did not meet him prior to the alleged assault. *Id.* Appellant also argues other differences including (1) the lack of evidence of choking or strangulation of A.S., (2) the absence of testimony from A.S. that Appellant threatened her or her family, (3) the opportunities for B.B. and A.F. to leave Appellant, and (4) B.B.'s testimony that Appellant did not force her to take drugs until after Appellant raped her. *Id.* at 30-32.

Accordingly, Appellant contends there was no basis for finding the evidence from each case admissible in the other cases because it did not establish a "signature" plan, design, or scheme to identify him as having committed the offenses. *Id.* at 33. Appellant also claims that issues such as *res gestae*, intent, or absence of mistake as to consent were irrelevant because each case formed its own story and because his defense focused on general denials of committing the acts of abuse testified to by the complainants. *Id.* at 34-35.

Appellant further asserts that the joinder resulted in prejudice because it "served solely to bolster [the] credibility of each complainant" and allowed "the jury to convict based on the number of offenses charged rather than allowing the jury to evaluate each case on its merits and the credibility of each complainant." *Id.* at 38. The cumulative impact of this prejudice, Appellant

contends, "risked that the jury would presume that, if [he] was accused of so many ghastly crimes, he must surely be guilt of some of them." *Id.* at 39.

As stated above, we review the trial court's decision to join charges for an abuse of discretion. *See Wholaver*, 989 A.2d at 898. Pursuant to Rule 582, "[o]ffenses charged in separate indictments or informations may be tried together if . . . the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion." Pa.R.Crim.P. 582(A)(1). Additionally, Rule 583 provides that "[t]he court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583.

This Court utilizes the following three-part test for evaluating whether joinder is appropriate in matters involving different acts or transactions:

> (1) whether the evidence of each of the offenses would be admissible in a separate trial for the other; (2) whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, (3) whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Commonwealth v. Brookins*, 10 A.3d 1251, 1256 (Pa. Super. 2010) (citations omitted).

The trial court's "initial determination of admissibility is critical to the court's disposition of the severance motion; thus, the evidence must be weighed in no less rigorous a fashion than if it were proffered for admission

at trial." *Id.* (citation omitted). Of relevance to this case, Pa.R.E. 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

Second, the trial court must determine whether joinder would pose a danger of confusing the jury. *Brookins*, 10 A.3d at 1256. Our Supreme Court has held that where the criminal offenses at issue are distinguishable in time, place and parties involved, a jury is capable of separating the evidence. *See Commonwealth v. Collins*, 703 A.2d 418, 423 (Pa. 1997).

Finally, the trial court must evaluate whether joinder would unfairly prejudice the defendant. *Brookins*, 10 A.3d at 1256; *see also* Pa.R.Crim.P. 583. This Court has explained that

> [t]he prejudice of which Rule 583 speaks is . . . that which would occur if the evidence tended to convict the [defendant] only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

- 17 -

***Commonwealth v. Dozzo***, 991 A.2d 898, 902 (Pa. Super. 2010) (citation omitted).

Instantly, in its Rule 1925(a) opinion, the trial court concluded that Appellant waived the issue or conceded to joinder, and then asserted that (1) Appellant "was alleged and charged with engaging in the business of trafficking young women[;]" (2) the complainants "were trafficked in a similar manner and within the same time frame by Appellant." Trial Ct. Op., 10/28/19 at 4-5. The trial court concluded, "We feel comfortable that the legal justification for the join[d]er is well supported by this record." ***Id.*** at 5.

Initially, we agree with Appellant that in one case, 4319-2017, the Commonwealth did not charge Appellant with human trafficking or attempted human trafficking, and the complainant, A.S., did not testify to any such an attempt. Nevertheless, we conclude that the trial court's rulings to join the cases and deny severance were legally sufficient and supported by the record and that Appellant has failed to establish reversible error.

The record establishes sufficient commonality in the four cases for the trial court to find a common plan, design, or scheme such that the evidence from each of the four cases would have been admissible in the other. Specifically, the testimony of each complainant evidenced Appellant's extreme domineering over them and disregard of their wishes to either not consume drugs or engage in sexual activity. Appellant used violence to restrain and compel them when he became dissatisfied and during his sexual abuse of them. This pattern of behavior occurred within a relatively short time between

September and October 2017. All four complainants were of the same race and similar ages. Taken as a whole, there was a sufficient basis to establish a common plan, design, or scheme. ***Cf. Commonwealth v. Arrington***, 86 A.3d 831, 844 (Pa. 2014) (discussing the admissibility of evidence of the defendant's "treatment of other girlfriends" that "demonstrated repeated efforts to preserve intimate relationships through harassment, intimidation, and physical violence" under Rule 404).

Moreover, contrary to Appellant's argument, Appellant's trial strategy of generally denying the acts did not negate the issues of intent and absence of mistake. The Commonwealth bears an unwavering burden of proof on all elements, and the evidence in each of the four cases was relevant to the issues of intent and absence of mistake in the other cases. ***See Commonwealth v. Prince***, 719 A.2d 1086, 1090 (Pa. Super. 1998) (noting that "where lack of consent is an element of the crime, the defendant does not bear the burden of proving consent: **the Commonwealth bears the burden of proving lack of consent, beyond a reasonable doubt**" (emphasis in original)); ***accord Commonwealth v. Rhodes***, 510 A.2d 1217, 1225 (Pa. 1986) (discussing consent).

Lastly, our review also reveals no basis to conclude that the joinder was prejudicial. The events surrounding each of the complainants were sufficiently distinct such that the possibility of confusion was minimal. ***See Collins***, 703 A.2d at 423. We also find no merit in Appellant's argument that the sole purpose of the joinder was to establish his propensity to commit crimes or

bolster the credibility of the multiple complainants rather than for the proper purposes discussed herein.

The factual differences in the cases highlighted by Appellant do not evince an abuse of discretion as to the core finding that the evidence from all four victims established a common plan, design, or scheme, intent, and absence of mistake and that prejudice would not result. Accordingly, we discern no abuse of discretion in the trial court's ruling to join the four cases and deny Appellant's motion to sever. *See Wholaver*, 989 A.2d at 898.

### Rule 404 Evidence

In his final challenge, Appellant contends that the trial court erred in permitting the Commonwealth to present testimony from C.F. pursuant to Rule 404(b). Appellant emphasizes that C.F. was familiar with Appellant through an internet dating site and that unlike the four complainants, C.F. met Appellant at his apartment and not a hotel room. Appellant's Brief at 39. Appellant further notes that C.F. did not testify to the presence or ingestion of drugs. *Id.* Lastly, Appellant notes that he did not record C.F. like he did with A.S. and B.B. *Id.* Appellant concludes that C.F.'s testimony was so dissimilar from the scenarios described by the four complainants that the trial court abused its discretion in finding it relevant under Rule 404, not prejudicial. *Id.* at 39. Appellant continues, "To the contrary, C.F.'s testimony served only to pile on already cumulative evidence depicting [him] as a person who sexually degrades and violates women." *Id.* at 40-41.

Our standard of review of a trial court's evidentiary ruling is well-settled. "The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." *Commonwealth v. Minich*, 4 A.3d 1063, 1068 (Pa. Super. 2010) (citations and quotation marks omitted).

On this record, we conclude that there were substantial similarities between C.F.'s testimony to permit the admission of the testimony pursuant to Rule 404(b) in that its probative value outweighed it prejudicial effect. We acknowledge the trial court's references to the use of social media to locate and groom the complainant was present only in the case of J.M., and that the alleged use of drugs or alcohol to overcome resistance was not present in C.F.'s testimony. Nevertheless, we cannot conclude that the C.F.'s testimony was admitted for the improper purpose of propensity evidence, where, as discussed above, the complainant's lack of consent, lack of accident, Appellant's motive and lack of mistake were at issue in the four cases against him. The record shows that the trial court weighed the probative value of C.F.'s testimony against its prejudicial effect, *see* Trial Ct. Op. at 6-7, and we discern no basis on which to conclude to that Appellant demonstrated a reversible abuse of discretion. *See Minich*, 4 A.3d at 1068. Accordingly, no relief is due.

**Conclusion**

- 21 -

For these reasons, we conclude that Appellant failed to preserve his procedural challenge to the joinder of 4318-2017, 4319-2017, and 4320-2017, that Appellant's substantive challenge to the joinder of all four cases pursuant to Rules 582(A) and 583 does not warrant relief, and that Appellant's claim that the trial court erred in admitting C.F.'s prior bad acts testimony lacks merit. Because Appellant has failed to establish any abuse of discretion in this appeal, we affirm the judgments of sentence.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/21